OPINION OF THE COURT
James F. Niehoff, J.
In this action brought as a class action, plaintiff moves for an order permitting the action to be so maintained pursuant *792 to CPLR 902. The court is also presented with cross motions by both parties for summary judgment.
THE FACTS
The complaint originally consisted of two causes of action. Upon a motion to dismiss for insufficiency, the second cause of action was dismissed and the first cause of action was held to be legally sufficient on its face. That determination by this court (Albert, J.) was affirmed by the Appellate Division (59 AD2d 933).
The action, as it now stands, is one to recover fees paid by plaintiff and other members of the purported class for pap smear tests performed by defendant laboratory during a period of time when it did not have a valid State permit as required by section 574 of the Public Health Law.
Prior to March, 1973 the Lakeville Medical Laboratories, Inc., at New Hyde Park had a valid permit issued to its director, Dr. Howard Adelman. In March, 1973, Dr. Adelman left the employ of Lakeville Medical Laboratories at New Hyde Park and became Director of Pathology for Lakeville Laboratories in Commack, New York. Pursuant to the provisions of subdivision 6 of section 575 of the Public Health Law the laboratory permit became automatically void by virtue of the change in the laboratory director. Following a hearing before a representative of the State Commissioner of Health an order was made wherein the defendant Lakeville Medical Laboratories, Inc., was directed to pay a civil penalty of $6,500 and the defendant Anthony Garofalo a civil penalty of $4,500 for their violation of the Public Health Law and administrative rules and regulations promulgated thereunder. The fines levied have been paid and the defendant Lakeville Medical Laboratories, Inc., has been restored its laboratory permit. During the period in issue, over 100,000 pap smear tests were performed by the defendant Lakeville Medical Laboratories, Inc., at fees ranging from $2.50 to $5 per test.
THE MOTION FOR CLASS ACTION STATUS
The prior decision of Judge Albert and the affirmance by the Appellate Division did not pass upon the question of whether this action may be continued as a class action but expressly left that question for the motion which is now made.
In determining whether or not this matter should be maintained as a class action the court must determine whether the prerequisites set forth in CPLR 901 (subd a) have been met *793 taking into consideration the matters spelled out in CPLR 902. CPLR 901 (subd a) reads as follows:
"One or more members of a class may sue or be sued as representative parties on behalf of all if:
"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
"2. there are question of law or fact common to the class which predominate over any questions aifecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
Viewing the complaint in the light of the foregoing statute this court must conclude that at least four of the five CPLR 901 prerequisites exist. The required numerosity is obviously present since it appears that there could be as many as 100,000 members of the class. (The court will assume numerosity for the purposes of this motion although no other lawsuits have been commenced by members of the class concerning this controversy in spite of what plaintiff’s attorney describes as the "great public interest aroused in this case”.) The questions of law and fact appear to be common to the class inasmuch as the action seeks only a refund of moneys paid for pap smear tests done during the period when the defendant laboratory was not licensed and the amount paid as fees therefor, and the question of law is whether the defendants should be permitted to retain those fees. These questions are the same for all members of the class and the only difference among individual members would be as to the specific amount paid. That difference is an insufficient reason for a holding that there is not the required commonality of interest. (Vickers v Home Fed. Sav. & Loan Assn., 56 AD2d 62, 65.) Plaintiff’s allegation that she had three pap smears performed by the defendant laboratory during the period involved and that she paid a $5 fee for each adequately demonstrates that her claim is typical of the claims of the class. Additionally, the court has no reason to doubt that the interests of the class would be fairly and adequately protected by the representative and her attorney. There remains the *794 question of the presence or absence of the prerequisite set forth in CPLR 901 (subd a, par 5). That question raises matters which must be considered and go to the heart of a decision on the propriety and wisdom of granting class action status here.
Is a class action superior to other available methods for the fair and efficient adjudication of the controversy herein? At first blush it would seem that the small size of the individual claims is sufficient in and of itself to require an affirmative answer to that question and that the instant dispute constitutes a classic example of a class action lawsuit. The class action is particularly appropriate where a large number of persons has been injured but not sufficiently for them as individuals to commence individual actions (Brady v Lac, Inc., 72 FRD 22, 29). It would seem impracticable here for separate actions to be prosecuted. However, upon analysis, it is the very smallness of the claims when considered with all of the facts involved which justifies the conclusion that a class action would not be appropriate here.
As previously indicated this action is to recover moneys paid to the defendant laboratory for services performed by it while it was unlicensed. The members of the proposed class would consist of all persons who had pap smear tests done by defendant laboratory for a period of over three years. Inasmuch as it appears that the laboratory performed approximately 100,000 of such tests, the class has a potential of 100,000 persons. The fee paid for each test averages $2.50 for institutional patients and $5 for private patients with roughly an equal distribution between institutional and private patients. Plaintiff alleges that she had three pap smears performed during the period involved here at a price of $5 for each (but see statement of facts in plaintiff’s memorandum of law wherein it is stated that she had two tests during that period).
Assuming that each member of the class had the same number of tests, i.e., one for each year (an unlikely fact to assume but surely a reasonable maximum) the maximum recovery for each class member in this action would be $15 for private patients and $7.50 for institutional patients. More likely the claim of most class members would be one third or two thirds of those sums, i.e., amounts varying between $2.50 and $10. Of course, a proportionate share of attorney’s fees *795 and expenses in the action would further reduce the ultimate award to be received by the members of the class.
It is noteworthy that section 3 (subd [a], par [13]) of the Uniform Class Actions Act provides that in determining whether a class action should be permitted for the fair and efficient adjudication of the controversy, the court should consider and give appropriate weight to "whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford signiñeant relief to the members of the class” (emphasis added). It can hardly be said that a recovery of anywhere from $2.50 to $10 less expenses is significant.
 It is noted further that defendants would be exposed to extremely high liability here if this action should proceed as a class action. The damages could approximate $375,000 to $500,000. There is no claim that the defendant laboratory performed the tests improperly or that any damages were caused to any patients as a result of the failure of defendants to obtain a license. The basis for this action is that one who violates the applicable licensing law passed to protect the public health and safety should not be permitted to profit by such a violation. (See, e.g., Richards Conditioning Corp. v Oleet, 21 NY2d 895.) As noted by Judge Albert in his aforementioned decision, this action is permitted as an extension of the legislative policy requiring that laboratories performing pap smear tests be licensed in order to protect the public health by discouraging violations of the statute. The question which necessarily arises is whether the wrong committed justifies authorizing the maintenance of a class action when one considers the extremely large liability exposure particularly in light of the fact that the beneficiaries would gain so little therefrom. The Federal courts have denied class action status where it "would result in absurdly high or ruinous damages, wholly unrelated to the actual harm caused by the violations.” (Berkman v Sinclair Oil Corp., 59 FRD 602, 608.)
In the case at bar, the benefit to the members of the plaintiff class would be miniscule and the liability exposure visited upon the defendants in light of the alleged wrong would, in the opinion of the court, "shock the conscience” (Kline v Coldwell, Banker & Co., 508 F2d 226, 234, cert den 421 US 963).
Similarly, the New York statute (CPLR 901, subd b) has *796 recognized the possibility of such a result, termed "annihilating punishment” (Berkman v Sinclair Oil Corp., 59 FRD 602, 611, supra; Vickers v Savings & Loan Assn., 87 Misc 2d 880, 882, mod 56 AD2d 62) by prohibiting the use of class actions for the recovery of a penalty except where specifically authorized by statute. Of course, the present action is not couched as one to recover a penalty but rather as one for damages actually sustained.
Notwithstanding that the prayer for relief seeks to recover monetary damages this action is clearly one intended more to vindicate the public good than to obtain compensation. As noted above, after a hearing upon charges made by the Department of Health of the State of New York the defendants were ordered to and did pay civil penalties totaling $11,000 for the violations which are the subject matter of this action. Therefore, the superior method for effecting the major purpose of the action, i.e., to discourage future violations, has been employed. The disciplinary penalty imposed adequately fulfills that function. (See Uniform Class Actions Act, § 3, subd [a], par [9].]
Finally, the court notes that it has been said that "[wjhenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute.” (Matter of Hotel Tel. Charges, 500 F2d 86, 91.) In the Hotel Tel. Charges case (supra) the Ninth Circuit Court of Appeals was faced with the question of allowing the maintenance of a class action wherein the class would have recovered between $2 and $6 per member. The Court of Appeals reversed the class certification of the District Court as erroneous.
Accordingly, the motion for class action status is denied.
THE MOTIONS FOR SUMMARY JUDGMENT
The cross motion by defendants for summary judgment, being used upon substantially the same arguments advanced on the afore-mentioned motion to dismiss the complaint, must be denied. (See Goldman v Garofalo, 59 AD2d 933, supra.)
As for plaintiff’s cross motion, this court is of the opinion that it must also be denied. Although all parties assert that there are no factual issues, it appears that an issue does exist which has not been dealt with on the papers submitted.
*797 The general rule that recovery is not available to one who performs services in violation of licensing statutes whose purpose is to protect the public health and safety seems to have one exception. The value of actual services rendered and materials supplied less profits have been held to be recoverable on a quantum meruit basis limited by the contract price (Lindner Appraisal Corp. v Frewil Corp., 72 Misc 2d 1041, 1045). By a parity of reasoning one who seeks to obtain moneys paid to an unlicensed defendant should be entitled to recover only the amount by which the payment made exceeds the value of the actual services rendered by the defendant.
On the papers presented the court cannot determine what profit is included in the amount paid by plaintiff and what the value of the actual services would be. Therefore, the cross motion by plaintiff for summary judgment is denied.