937 P.2d 668

**Gene PELLETIER dba G & B Design Builders, Plaintiff/Appellee/Cross–Appellant,**

v.

**Douglas R. JOHNSON and Terri–Lynn A. Johnson, husband and wife, Defendants/Appellants/Cross–Appellees.**

No. 2 CA–CV 96–0244.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 22, 1996.

Review Denied June 5, 1997.

Stein and Stein, P.C. by Henry M. Stein, Mesa, for Defendants/Appellants/Cross–Appellees.

Paul M. Rybarsyk, Scottsdale, for Plaintiff/Appellee/Cross–Appellant.

## OPINION

PELANDER, Presiding Judge.

The primary issue in this case is whether a seller whose contract is covered by and fails to comply with Arizona's Home Solicitations and Referral Sales Act (the Act), A.R.S.

§§ 44–5001 to 44–5008, may, under proper circumstances, recover equitable, restitutionary damages from the consumer/buyer based on unjust enrichment principles. Ruling in the affirmative, the trial court entered judgment for the seller and awarded it damages and attorney's fees. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

■ We view the evidence and reasonable inferences therefrom in the light most favorable to sustaining the trial court's judgment. *Inch v. McPherson*, 176 Ariz. 132, 136, 859 P.2d 755, 759 (App.1992). Pursuant to a written contract, defendants/appellants agreed to purchase and plaintiff/appellee G & B Design Builders (G & B), an Arizona licensed contractor, agreed to install vinyl siding on defendants' home for $5,475. Although the contract provided that defendants could cancel the transaction within three business days, they never attempted to do so. G & B installed the siding approximately one week after the contract was executed. When defendants refused to pay, G .& B sued them for breach of contract and later added claims for *quantum meruit* and unjust enrichment.

After a bench trial, on appeal from arbitration, the trial court entered findings of fact and dismissed G & B's contract claim, concluding that the parties' transaction constituted a "home solicitation sale" within the meaning of § 44–5001(1) and that the parties' contract was "ineffective" because it lacked language required by § 44–5004(B). The court also ruled, however, that G & B was entitled to recover the reasonable value of the improvements (siding and installation) in the amount of $5,475 based on unjust enrichment. The court entered judgment for G & B in that amount and awarded $7,800 of the $11,160 G & B had requested in attorney's fees plus taxable costs. This appeal followed.

## DISCUSSION

■ Defendants do not question any of the trial court's findings of fact but rather challenge several legal rulings, most notably G & B's entitlement to equitable relief. Therefore, we accept the trial court's factual findings but are not bound by its conclusions of law. *Ponderosa Plaza v. Siplast*, 181 Ariz. 128, 135, 888 P.2d 1315, 1322 (App.1993); *Imperial Litho/Graphics v. M.J. Enter.*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986).

■ Defendants contend G & B should have been precluded from recovering any unjust enrichment damages because its violation of § 44–5004 rendered the contract invalid and constituted a class 3 misdemeanor under § 44–5008. According to defendants, the trial court's judgment "effectively eviscerated the statutory mandate" of the Act and thwarted its underlying public policy.

The Act was originally passed in 1970 and has been amended several times since then. Section 44–5004(B) provides in part that "[n]o agreement of the buyer in a home solicitation sale shall be effective unless it is dated, signed by the buyer and contains a conspicuous notice" to the buyer containing language set forth in that subsection, including a provision that the buyer "may cancel this agreement any time prior to midnight of the third business day after the date of this transaction." Similarly, § 44–5004(C) provides in part that "[n]o agreement of the buyer in a home solicitation sale shall be effective" unless a completed notice of cancellation form, the language of which is set forth in that subsection, is attached to the contract or receipt. As our supreme court has stated, "[t]he agreement of sale is not valid [under § 44–5004] unless it contains a conspicuous notice of various matters, including the buyer's right to cancel." *State v. Direct Sellers Ass'n*, 108 Ariz. 165, 166, 494 P.2d 361, 362 (1972) (holding that the Act, in general, is constitutional).

The question here is whether the Act may be construed as allowing a seller to obtain equitable relief notwithstanding a violation of its provisions. Statutory interpretation is a question of law which we review *de novo*. *Parker v. Vanell*, 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992). "If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). However, "if there is uncertainty about the meaning or interpretation of a statute's

terms," "we try to determine and give effect to the legislature's intent" by considering "the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Id.* at 268, 872 P.2d at 672.

The words of the Act do not specifically preclude equitable relief if a seller violates any provision of the Act, nor do the legislature's declarations of the Act's purpose support such a blanket prohibition. When the Arizona legislature originally passed the Act in 1970, it declared its purpose was "to regulate, not prohibit, home solicitations sales by, [*inter alia*], [g]ranting the buyer a statutory period during which time the contract may be canceled." 1970 Ariz.Sess.Laws, ch. 114, § 1. Similarly, in amending the Act in 1973 the legislature declared its purpose was "to make void any attempt to waive buyer cancellation rights in home solicitation sales." 1973 Ariz.Sess.Laws, ch. 49, § 1. Those express legislative purposes underlying the Act would not be furthered or achieved by automatically depriving the seller of equitable recourse and relief for material and labor it has furnished to a buyer under the circumstances of this case.

G & B's contract was dated, signed by and furnished to defendants. In language almost identical to that required by § 44–5004(B), the contract provided immediately above defendants' signatures that they "may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction." It is undisputed that defendants were aware of that provision and never sought to cancel the transaction. Although the contract did not fully comply with the requirements of § 44–5004, it fulfilled the basic legislative purpose of "[g]ranting the buyer a [three business day] period during which time the contract may be canceled." 1970 Ariz.Sess.Laws, ch. 114, § 1. *See Direct Sellers Ass'n,* 108 Ariz. at 168, 494 P.2d at 364 (noting that the Act primarily grants a buyer the right to cancel within the statutory time period). There was no evidence that defendants would have acted differently had the contract fully complied with § 44–5004;

nor was there evidence that defendants were harmed by the noncomplying contract. As for the 1973 legislative declaration of the Act's purpose, there was no evidence or contention that G & B attempted to induce defendants to waive their cancellation rights. 1973 Ariz.Sess.Laws, ch. 49, § 1.

One commentator has suggested that Arizona's Act may have been modeled on Connecticut's Home Solicitation Sales Act, Conn. Gen.Stat.Ann. §§ 42–134a to 42–143 (West 1996), because of their similarities. John G. Balentine, *Arizona's Home Solicitation and Referral Sales Act: An Evaluation and Suggestions for Reform,* 12 Ariz.L.Rev. 803, 806 (1970). If so, we generally would consider the Connecticut courts' construction of their Act, at least prior to adoption of the Arizona Act in 1970, as persuasive but not binding authority. *See England v. Ally Ong Hing,* 105 Ariz. 65, 68, 459 P.2d 498, 501 (1969); *Schuldes v. Nat'l Sur. Corp.,* 27 Ariz.App. 611, 613, 557 P.2d 543, 545 (1976).

In a 4–3 decision, the Connecticut supreme court held that a contractor whose agreement admittedly failed to comply with and was unenforceable under that state's Home Improvement Contractors Act,[1] Conn. Gen.Stat.Ann. § 20–429, could not recover in quasi-contract by demonstrating unjust enrichment of the homeowner for whom the contractor had performed work. *Barrett Builders v. Miller,* 215 Conn. 316, 576 A.2d 455 (1990). The dissent rejected "an interpretation [of the Act] so fraught with the danger of exploitation by the unscrupulous," *id.* at 335, 576 A.2d at 464, and noted that neither the statutory language nor its policy mandated that conclusion, which effectively "result[ed] in forfeitures enriching the homeowners regardless of the merits of the disputes or the value of the work performed." *Id.* at 333, 576 A.2d at 463. That would be the result here. As noted, defendants knew of and never exercised their right to cancel the contract within three business days of the transaction. G & B commenced and completed its work only after that time frame had elapsed. The trial court found that "[d]efendants never complained to [G &

---

1. Connecticut's Home Improvement Contractors Act incorporates by reference the requirements of its Home Solicitation Sales Act. Conn.Gen.Stat. Ann. § 20–429(a)(6), (e).

B] about the siding or the installation until after the complaint was filed." On appeal, defendants do not challenge the quality of G & B's work, its timeliness, or the reasonable value of its material and labor.

Defendants admittedly received the benefit of G & B's services at a price customarily charged for such jobs, yet paid nothing and incurred no debt for those services. Moreover, the trial court specifically found that G & B made no fraudulent misrepresentations, a finding not challenged on appeal, and there was no evidence that G & B intentionally or knowingly violated the Act. Under the circumstances, assuming *arguendo* the Act applied and precluded G & B from recovering on its contract,[2] it was "entitled to recovery on *quantum meruit* for the reasonable value of the improvements [defendants have] received." *Beley v. Ventura County Mun. Court,* 100 Cal.App.3d 5, 8, 160 Cal.Rptr. 508, 509 (1979).

In sum, we are persuaded by and therefore adopt the position of the dissent in *Barrett Builders.* That position is consistent with other authorities, including the Restatement (Second) of Contracts, § 197 (1981) ("Except as stated in §§ 198 and 199, a party has no claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy **unless denial of restitution would cause disproportionate forfeiture.**") (emphasis supplied). *See also id.,* Comment b; *Rosamilia Landscaping, Inc. v. Deluca,* 154 Misc.2d 630, 585 N.Y.S.2d 999 (Sup.1992); *cf. Reynolds v. D & N Bank,* 792 F.Supp. 1035, 1039 (E.D.Mich.1992). It also comports with restitution principles recognized and applied in analogous Arizona cases. *See, e.g., Evans v. Mason,* 82 Ariz. 40, 45, 308 P.2d 245, 248 (1957) (Where an oral contract is within the statute of frauds and no action can be maintained thereon for that reason, "one who has rendered services pursuant thereto is not remediless for he can sue on a quantum meruit, a promise to pay the reasonable val-

ue thereof being implied."); *Ruck Corp. v. Woudenberg,* 125 Ariz. 519, 522, 611 P.2d 106, 109 (App.1980) ("If a person performs work, renders services, or expends money under an agreement which is unenforceable, but not illegal, he may recover in quantum meruit for the value of the services and expenses reasonably incurred in good faith.").

We also agree with the reasoning of the California court of appeals in *Beley,* a case upon which the trial court relied, that "there was nothing illegal or immoral about the contract itself or the nature of the services and materials to be furnished under it." 100 Cal.App.3d at 8, 160 Cal.Rptr. at 509. Unlike the "heir finder" agreement at issue in *Landi v. Arkules,* 172 Ariz. 126, 835 P.2d 458 (App.1992), G & B's contract for the sale and installation of vinyl siding did not involve performance of any "unlawful act[s]," *id.* at 135, 835 P.2d at 467, and was neither "void as against public policy" nor inherently "illegal." *Id.* at 136, 835 P.2d at 468.

We summarily dispose of the remaining issues raised on appeal. The trial court did not err in granting G & B's current counsel a few days to comply belatedly with the formal requirements of Rule XII(c)(1), Uniform Rules of Practice of the Superior Court, 17B A.R.S., which he then did, rather than dismissing G & B's appeal from arbitration based on a timely-filed but deficient notice of appeal. Other than allowing the case to be tried and resolved on its merits instead of dismissing it on technical, procedural grounds, the trial court's ruling did not surprise or prejudice defendants.

Finally, the trial court did not abuse its discretion or otherwise err in awarding attorney's fees to G & B. Notwithstanding the dismissal of G & B's contract claim, this essentially was a "contested action arising out of a contract, express or implied." A.R.S. § 12–341.01(A); *ASH, Inc. v. Mesa Unified Sch. Dist.,* 138 Ariz. 190, 192–93, 673 P.2d 934, 936–37 (App.1983). Moreover, a

---

2. In its cross-appeal, G & B contends *inter alia* this transaction was not a "home solicitation sale" within the meaning of § 44–5001(1) because defendants made no installment payments, incurred no debt payable in installments, and never actually obtained a loan even though G &

B assisted defendants' financing efforts. Thus, G & B challenges the trial court's dismissal of the contract claim and its conclusion that the Act covered this transaction. In light of our decision, we do not address those issues.

party prevailing on a *quantum meruit* claim, which G & B sought to add long before trial, may recover attorney's fees under § 12–341.01. *Murdock–Bryant Constr., Inc. v. Pearson,* 146 Ariz. 57, 68–69, 703 P.2d 1206, 1217–18 (App.1984), *modified in part on other grounds,* 146 Ariz. 48, 703 P.2d 1197 (1985); *cf. Ruck Corp.,* 125 Ariz. at 522, 611 P.2d at 109.

Affirmed. G & B is awarded its reasonable attorney's fees and costs on appeal upon compliance with Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

HATHAWAY and FLÓREZ, JJ., concur.